UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILBURN KIMBROUGH,                          Case No. 09-13259

              Plaintiff,                    John Corbett O'Meara
v.                                          United States District Judge

COMMISSIONER OF                             Michael Hluchaniuk
SOCIAL SECURITY,                            United States Magistrate Judge

              Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 15)

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On August 19, 2009, plaintiff filed the instant suit seeking judicial review of

defendant's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge John Corbett

O'Meara referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of Supplemental

Security Income benefits.  (Dkt. 3).  This matter is before the Court on plaintiff's

motion to remand and defendant's motion for summary judgment.  (Dkt. 12, 15).

B.    Administrative Proceedings

Plaintiff filed the instant claims on January 31, 2007, alleging that he became unable to work on July 1, 2001.  (Dkt. 10, Tr. at 87).  The claim was initially disapproved by the Commissioner on June 8, 2007.  (Dkt. 10, Tr. at 50-53).  Plaintiff requested a hearing and on September 10, 2008, plaintiff appeared with counsel via video teleconference before Administrative Law Judge (ALJ) E. James Gildea, who considered the case *de novo*.  In a decision by the Appeals Council dated November 26, 2008, the ALJ found that plaintiff was not disabled.  (Dkt. 10, Tr. at 39-49).  Plaintiff requested a review of this decision on January 23, 2009.  (Dkt. 10, Tr. at 4).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on June 26, 2009, denied plaintiff's request for review.  (Dkt. 10, Tr. at 1-3); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 56 years of age at the time of the most recent administrative hearing. (Dkt. 10, Tr. at 87). Plaintiff's relevant work history included approximately 3 years as a satellite tv installer. (Dkt. 10, Tr. at 112). In denying plaintiff's claims, defendant Commissioner considered coronary artery disease as possible bases of disability. (Dkt. 10, Tr. at 44).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since January 31, 2007. (Dkt. 10, Tr. at 44). At step two, the ALJ found that plaintiff's impairment was "severe" within the meaning of the second sequential step. *Id.* At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.* At step four, the ALJ found that plaintiff could not perform his past relevant work. (Dkt. 10, Tr. at 47). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 10, Tr. at 48).

### B.   Plaintiff's Claims of Error

Plaintiff contends that the RFC fails to consider impairments of depression, right shoulder pain, and dizzy spells. The doctor who performed the medical exam for Social Security when plaintiff filed his claim, indicated that he was considered

overweight with a BMI of 27.8. He indicated that physical deconditioning and excessive weight may contribute to plaintiff's difficulty with climbing ladders and walking around on roofs. (Tr. 152). Plaintiff asserts that "[w]hen combined with his current impairment causing dizzy spells, [he] would be an accident waiting to happen in a factory setting such as an assembler, hand packer or inspector." Plaintiff testified that he has a fear of falling due to dizziness or "brown outs" as he calls them, which he says occur every 2-3 days or as often as every day, lasting for 15-30 minutes. (Tr. 126-127). According to his testimony, plaintiff's physician has prescribed Meclizine, a/k/a Antivert, but despite this medication, the claimant still has problems with dizzy spells. (Tr. 20). Although the RFC provided for no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling, plaintiff argues that there were no factors to accurately portray his impairment related to dizzy spells. The ALJ should have additionally considered no exposure to moving machinery, unprotected heights, ladders and scaffolds, along with a workplace that is free from floor hazards. All the jobs identified by the VE, according to plaintiff, do not appear to be appropriate for a hypothetical claimant who suffers from and is treated for dizzy spells.

After examination by the state agency physician, plaintiff was found to have a decreased range of motion of the right shoulder. (Tr. 149-150). He complained of having shoulder pain on occasion, requiring his wife helped him to bathe. (Tr.

148).  The jobs of assembly, hand packing and inspector would all require bimanual dexterity and the ability to reach all directions, including overhead reaching.  Although Dr. Able indicated that plaintiff's digital dexterity, i.e., fine manipulation, was not affected, plaintiff asserts that the range of motion of the dominant arm relative to reaching would be affected.  Accordingly, plaintiff argues that the hypothetical question fails to accurately portray his right shoulder impairment and the jobs identified by the vocational expert cannot constitute substantial evidence due to a failure in accurately portraying the shoulder pain with restricted range of motion of the dominant right arm.

Finally, plaintiff asserts that he has been diagnosed with depression and was initially put on Zoloft.  (Tr. 277).  He also has problems with insomnia.  (Tr. 276).  According to plaintiff, at the time of the hearing, he was taking Zyprexa, which is used to treat Bipolar Disorder and Schizophrenia.  He has problems with remembering things.  (Tr. 122).  He indicates he gets very emotional.  (Tr. 126)  Socially, he engages in no outside activities other than basic interaction with his family.  (Tr. 124).  He indicates he is unable to go out and people rarely come to visit, other than family.  (Tr. 125).  Plaintiff argues that there was no factor in the RFC to accommodate the problems associated with his depression.  The ALJ did not discuss any problems with depression or stress.  Because he was diagnosed

with depression and was receiving medication for that condition, according to plaintiff, the RFC does not accurately portray his mental impairments.

C.    Commissioner's Cross-Motion for Summary Judgment

Plaintiff argues that the ALJ failed to consider the combination of his weight and dizzy spells when determining plaintiff's ability to work. Specifically, Plaintiff asserts that dizzy spells affect the ability to perform the walking requirements of medium work. As the ALJ noted in his decision (Tr. 46), while plaintiff testified at the hearing that he suffers from dizzy spells (Tr. 20), the only documented complaints of "dizziness" was prior to plaintiff's left heart catheterization on March 26, 2004 (Tr. 174, 254, 263, 320). Following catheterization, the ALJ observed that plaintiff denied any dizziness to his physicians. (Tr. 46). On discharge from the hospital in March 2004, Virender D. Parekh, M.D., reported that plaintiff "is not having any pain in the chest, dizziness, or lightheadedness." (Tr. 170, 246). On March 30, 2004, B. Samman, M.D., saw plaintiff and noted that "[h]e denies any dizziness" since his discharge. (Tr. 244). Thus, the Commissioner argues that the evidence does not establish that dizziness limits plaintiff's ability to work.

Plaintiff also asserts that he is "overweight" and "[w]hen combined with his current impairment causing dizzy spells, [plaintiff] would be an accident waiting to happen in a factory setting such as an assembler, hand packer, or inspector." In

documenting his weight, plaintiff cites a May 21, 2007 report from Dr. Tama D.

Abel, M.D., who examined plaintiff at the request of the Agency and noted that

plaintiff "is considered overweight with a BMI of 27.8" and opined that "his

excessive weight may be contributing to his difficulty with climbing ladders and

walking around on roofs." (Tr. 152). However, Dr. Abel indicated that plaintiff

was able to ambulate without any assistive device. (Tr. 152). Dr. Nasol, a State

Agency reviewing physician, reviewed the evidence of record including Dr. Abel's

clinical examination report and acknowledged that plaintiff was "mildly obese ...

per [Dr. Abel's] statements of 5/21/2007." (Tr. 156). As his notes reflect, Dr.

Nasol was aware of plaintiff's weight and had reviewed Dr. Abel's report before

opining that plaintiff could stand and/or walk about 6 hours in an 8-hour workday

(Tr. 156) and could occasionally climb and balance. (Tr. 157). The ALJ explained

that "[t]he opinion of Dr. Nasol ... is also given significant

weight as it is consistent with the evidence." (Tr. 47). Thus, the restrictions set

forth in the ALJ's RFC finding contemplate the affects of plaintiff's weight on his

ability to perform work, as Dr. Nasol took that factor into consideration when

rendering his opinion.

Plaintiff argues that the ALJ failed to accommodate right shoulder

limitations, and, as a result, the hypothetical question posed to the VE was flawed.

However, the ALJ reasonably did not include any right shoulder limitations in his

RFC finding. Plaintiff notes that Dr. Abel stated, "[d]ecreased range of motion is noted of the right shoulder." However, the decrease was slight as a full range of abduction is 150 degrees, and plaintiff's was 120 degrees, and the full range of forward elevation is 150 degrees, and Plaintiff's was 130 degrees. (Tr. 150). More importantly, however, Dr. Abel stated that plaintiff "can lift up to 60 pounds." (Tr. 150). Further, as Dr. Nasol opined, "the alleged shoulder [range of motion] problems [are] likely just muscle strain and or [degenerative joint disease]. Not that the [claimant] does general labor and states can lift 60 lb." (Tr. 156-57). Consequently, the ALJ reasonably found that plaintiff could perform medium work.

Plaintiff argues that the ALJ failed to accommodate his problems resulting from depression. However, the evidence does not support plaintiff's contention that he is limited due to depression. Notably, when plaintiff saw Dr. Abel on May 21, 2007, he identified his complaints as "heart, lung, and leg complications' (Tr. 148). Dr. Abel conducted a mental status examination and reported that Plaintiff's affect, dress, and effort are appropriate ... Mental status is normal." (Tr. 149). Dr. Abel also reported that plaintiff was cooperative and that his "immediate, recent, and remote memory was intact with normal concentration." (Tr. 148). In addition, he indicated that plaintiff's "insight and judgment are both appropriate." (Tr. 149). Moreover, in a "Health History Assessment" for Port Huron Hospital Plaintiff

indicated that he had never been treated for anxiety, depression, or panic disorder; was not under a lot of stress; and did not want help with outside assistance. (Tr. 185). Thus, the record lacks substantial support for limitations resulting from any mental impairment.

The Commissioner asserts that the hypothetical question on which the ALJ relied included all of plaintiff's limitations to the extent the ALJ found them credible based on the evidence of record. Thus, the ALJ was entitled to rely on the VE's testimony in response to the hypothetical question. The Commissioner urges the Court to reject plaintiff's argument that "[a]ll three jobs identified by the [VE] may have contact with unprotected heights, moving machinery, and hazards on the floor, i.e., boxes, parts, oil, etc." Looking at the job of hand packager in the DOT, for example, plaintiff's speculation is unfounded because the DOT explains that exposure to moving mechanical parts and high exposed places is not present in the job of hand packager. The DOT also explains that climbing is not present either. Thus, the job of hand packager does not require exposure to moving machinery, unprotected heights, ladders, or scaffolds. The VE testified that 8,000 hand packager jobs existed in the state, and thus, the VE's testimony substantially supports the ALJ's finding that plaintiff can perform a significant number of available jobs despite the functional limitations resulting from his impairments.

# III. DISCUSSION

## A. <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed.Appx. 521, 526 (6th Cir. 2006).

      B.    <u>Governing Law</u>

        1.    Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the
Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381
*et seq*.). Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled. F. Bloch,
Federal Disability Law and Practice § 1.1 (1984). While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or

which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's

opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'"

*Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted).

"Claimants are entitled to receive good reasons for the weight accorded their

treating sources independent of their substantive right to receive disability

benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007).

      2.     Analysis

As the ALJ noted in his decision, "[a]s for the opinion evidence, there are no

treating source opinions." (Tr. 46).  Under the circumstances, the ALJ properly

relied on the opinions of the state agency examiners.  Dr. Abel examined Plaintiff

on May 21, 2007.  (Tr. 147-52).  On examination, Dr. Abel reported that plaintiff

was able to ambulate without any assistive device.  (Tr. 152).  Plaintiff told Dr.

Abel that he could walk about one block and climb a flight of stairs.  (Tr. 148).

Plaintiff also stated that he could "lift up to 60 pounds." (Tr. 148).  On

examination, Dr. Abel reported that there was no evidence of joint laxity, crepitus,

or effusion; grip and pincher strength remained intact; and dexterity was

unimpaired.  (Tr. 149).  Dr. Abel also reported that plaintiff had no difficulty

getting on and off the examination table, no difficulty heel and toe walking, no

difficulty squatting and arising; no difficulty balancing; and no difficulty hopping."

(Tr. 149-50).  Dr. Abel noted that plaintiff's motor strength and tone were normal,

sensory was intact, and that plaintiff walked with a normal gait with use of an

assistive device. (Tr. 151-52). Dr. Abel opined that plaintiff could "lift up to 60 pounds." (Tr. 152). In his decision, the ALJ stated, "Dr. Abel's opinion that the claimant could lift up to 60 pounds is given significant weight as it is supported by the claimant's statement to Dr. Abel and is consistent with the medical evidence of record." (Tr. 47).

The ALJ also considered the opinion of Dr. Nasol, the state agency reviewing physician. Dr. Nasol opined that Plaintiff could occasionally lift and/or carry 50 pounds and 25 pounds frequently; stand about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday, and was not limited in his ability to push and/or pull with his extremities. (Tr. 156). He also opined that plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 157). As the ALJ explained, "[t]he opinion of Dr. Nasol regarding the claimant's residual functional capacity is also given significant weight as it is consistent with the evidence." (Tr. 46).

There is virtually no evidence in the record to support plaintiff's claims that either dizziness or depression impaired him in any significant way. The undersigned finds it significant that there is no actual evidence in the record that plaintiff was prescribed antivert for his vertigo/dizziness issues. Rather, the only mention in the entire administrative record is a historical note dated October 31, 2007 that plaintiff reported: "vertigo - long hx - uses antivert." (Tr. 272). The

undersigned was not able to find any other references to treatment for dizziness after plaintiff's heart procedure was performed in 2004 and no evidence that antivert was ever actually prescribed to plaintiff at any point.

Plaintiff was hospitalized in January, 2007 for confusion and combativeness. Records from his treating physician note that, on January 23, 2007, that plaintiff had been admitted to the hospital due to sepsis and acute renal failure, but as observed by the ALJ, there are no records to indicate it was anything other than an acute episode that had been resolved. January 23, 2007 office notes show that plaintiff still had some confusion and was put on Zyprexa, which has helped. (Tr. 274). However, no treating physician ever offered an opinion regarding whether and to what extent plaintiff's apparent brief episode of confusion and treatment with Zyprexa impacted his ability to work. The undersigned is not persuaded that the mere fact that plaintiff is taking Zyprexa, without more medical evidence of any mental impairment or specific limitations, is sufficient to overturn the ALJ's decision.

The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her

functional capacity to do work. One does not necessarily establish the other."

*Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The

regulations recognize that individuals who have the same severe impairment may

have different [residual functional capacities] depending on their other

impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217

Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). An ALJ's findings

based on the credibility of an applicant are to be accorded great weight and

deference, particularly since the ALJ is charged with the duty of observing a

witness's demeanor and credibility. *Walters*, 127 F.3d at 531.

Plaintiff's claim of additional restrictions and limitations beyond those

found by the ALJ seem to be based on the mere existence of his conditions (and

even the existence of dizziness is in doubt), rather than on any resulting

impairments or specific restrictions. While the record reveals that plaintiff's

condition resulted in several limitations, as found by the ALJ, the mere existence

of a particular condition is insufficient to establish an inability to work. *See, e.g.*,

*Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (The residual

functional capacity circumscribes "the claimant's residual abilities or what a

claimant can do, not what maladies a claimant suffers from-though the maladies

will certainly inform the ALJ's conclusion about the claimant's abilities."); *Yang v.*

*Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004) ("A claimant's

severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."); *Griffeth*, 217 Fed.Appx. at 429 ("The regulations recognize that individuals who have the same severe impairment may have different residual functional capacities depending on their other impairments, pain, and other symptoms.").  Moreover, plaintiff does not offer any opinion from a treating physician that he was more physically or mentally limited than as found by the ALJ.  *See Maher v. Sec'y of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir. 1987), citing, *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions constitutes substantial evidence for a finding of non-disability.").  To the extent that plaintiff points to other subjective limitations, such subjective evidence is only considered to "the extent [it] can reasonably be accepted as consistent with the objective medical evidence and other evidence."  *Ditz v. Comm'r of Soc. Sec.*, 2009 WL 440641, *10 (E.D. Mich. 2009), citing, 20 C.F.R. § 404.1529(a), *Young v. Secretary*, 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan v. Sec'y*, 801 F.2d 847, 852 (6th Cir. 1986).  In this case, there is no such evidence and the ALJ's RFC finding was entirely consistent medical evidence.

Given that a severe impairment does not equate to disability, the undersigned suggests that the ALJ's decision to find plaintiff's claimed limitations to be only partially credible is supported by the substantial evidence in the record

and properly incorporated into the RFC finding. The ALJ's obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. "The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

In light of the medical and other evidence discussed above, the lack of physical restrictions or mental impairments noted by any treating physician, the undersigned concludes that the VE's opinion is consistent with the findings of

treating and consulting physicians and mental health professionals, and can properly be considered substantial evidence. Thus, the undersigned concludes that there is an insufficient basis on this record to overturn the ALJ's credibility determination and that the hypothetical relied on properly reflected plaintiff's limitations.

C.    Conclusion

After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

s/Michael Hluchaniuk

Date: August 19, 2010                    Michael Hluchaniuk
                                         United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 19, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Lewis M. Seward, Judith E. Levy, AUSA, and the Commissioner of Social Security</u>.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov
